## GRIER vs. McCORMICK and wife.

*Reversal of judgment, in equity, on question of fact.*

. In a suit in equity, involving the title to land, where the question of fact was, whether a certain deed of conveyance of the land, from defendant to plaintiff, was delivered to a third party *absolutely* for the plaintiff, or only in *escrow,* this court reverses the judgment on the ground that it appears to be *contrary to the weight of evidence.*

APPEAL from the Circuit Court for *Waukesha* County.

Action by *Honora Grier* to have the defendants adjudged to release to her all claim to certain described real estate. The complaint alleges, in substance, that plaintiff purchased the property of defendant *Roger McCormick* on or about the 12th of September, 1870; that on that day said *Roger* duly executed a warranty deed, conveying the premises to plaintiff in fee simple, which deed, duly acknowledged and stamped, was by said defendant, for a valuable consideration, transferred and delivered to the plaintiff; and that afterwards on the same day, by virtue of such purchase, plaintiff, with the privity and consent of said *Roger,* entered upon and occupied said premises, and has ever since occupied them, and is now in possession thereof as her homestead, having the legal title thereto; that on or about the 1st of February, 1871, said deed, being in the office of one Hathaway, and not having been recorded, was destroyed by fire together with said office; that said *Roger* and the other defendant, his wife, married to him since the execution of said deed, now claim an interest in said premises inconsistent with plaintiff's said title; and that after the destruction of said deed, and before the commencement of this action, plaintiff caused to be drawn a deed of conveyance of said premises from defendants to her, and presented it to them, and demanded that they should execute it, which they refused to do.

Grier vs. McCormick and wife.

The answer of *Roger McCormick* avers that sometime in the fore part of September, 1870, the plaintiff and said defendant entered into a verbal agreement by which plaintiff was to pay said defendant $825 for the premises in question; that the plaintiff then had a mortgage against one Patrick Grier, which she said was perfectly good and would be paid the next November; that there was then due on said mortgage $880, which was to be assigned to defendant, and he was to deed the premises to plaintiff; that the parties then went to Mr. Hathaway (an attorney-at-law) to have the papers drawn, and a deed was there made, and the said mortgage assigned; that after the papers were executed, but not delivered, it was agreed that the deed, note and mortgage, and assignment, should be left in Mr. Hathaway's hands upon these terms and conditions, viz: Hathaway was to receive the money due on said note and mortgage, retain in his hands $825, give the balance to the plaintiff, then pay up and procure to be discharged a mortgage on the premises here in dispute, for some $200, due to one Thompson, and then pay over the balance to *Roger McCormick*, and after this was done, but not before, he was to deliver to plaintiff the said deed; that under the full belief that the money would be paid on said note and mortgage, and that he would be paid the price agreed, defendant let the plaintiff into possession of the premises, which she has ever since used and occupied; that when said note and mortgage became due they were not paid, nor has any part of the amount thereof ever been paid, and, as defendant is informed and believes, they are entirely worthless; that there were prior mortgages on the property covered by said mortgage, which have been foreclosed, and the property sold, plaintiff being a party to the suit, and her rights foreclosed; and plaintiff, though often requested, has paid no part of the purchase money of said lands. The answer then denies that said deed was ever delivered to the plaintiff, or that she ever was entitled to a delivery thereof, and avers that the title to the premises, both legal and equi-

table, and the right of possession, are in said defendant; and it asks judgment that the complaint be dismissed, and that plaintiff deliver the possession, etc.

The court found, in substance, that *Roger McCormick*, after being correctly informed by the mortgagor in the mortgage above mentioned, as to the number and amount of the prior liens upon the premises covered by said mortgage, agreed with the plaintiff to receive from her said mortgage in *payment* for the land here in dispute, and to refund her fifty-five dollars when the mortgage debt should be paid; that afterwards the parties went to Mr. Hathaway's office, and by their direction a warranty deed of the premises, conveying the land to the plaintiff, was drawn by Hathaway, and was duly executed, acknowledged and stamped by *Roger McCormick*, and delivered to Hathaway *for the plaintiff*, and an assignment of said mortgage to said defendant was also drawn, and was by the plaintiff duly executed, acknowledged and stamped, and was, with said mortgage, delivered to Hathaway for said defendant; that, it then appearing that there was a mortgage for $200 existing against the premises conveyed by defendant's deed, it was agreed between the parties that the mortgage papers should be left with Hathaway until November 1, 1870, when the mortgage assigned to defendant by plaintiff would become due, in order that the money thereon should be paid to Hathaway, who should receive the same and discharge for defendant said $200 mortgage, and pay plaintiff the fifty-five dollars above mentioned; that plaintiff directed Hathaway to cause said deed to her to be recorded, and there were no more acts for her to perform in the premises; that on the same or next day plaintiff was put in possession of the premises by said defendant, and has ever since occupied and resided upon them; that a few days after she was put in possession, defendant assigned in writing, and delivered to her, a policy of insurance which he held upon the house on said premises; that no part of the mortgage so assigned to said defendant was paid when it became due, No-

vember 6, 1870; that after the day last named, and previous to the destruction of Mr. Hathaway's office, said deed, mortgage and assignment, by fire (which occurred in February, 1871), said defendant tried in various places to sell said mortgage, and was offered $600 therefor, which he refused to accept; that he never offered to retransfer the mortgage to the plaintiff; and that before the commencement of this action, a prior mortgage on one-half of the premises covered by the mortgage assigned to said defendant, was foreclosed, and the premises sold, but nothing was realized for defendant's mortgage by such sale.

Upon this finding, the court held that the delivery of the deed to Hathaway for the plaintiff was absolute, and vested the title to the premises in her; and it adjudged that the defendants should release to her all claims, etc.

The defendants filed exceptions to the findings of fact and conclusions of law, and appealed from the judgment.

*Edwin Hurlbut,* for appellants.

*George F. Westover,* for respondent.

DIXON, C. J.    I cannot rid my mind of the impression, very clear and strong, derived from a reading of the testimony, that this case, which presents nothing but a question of mere fact, was wrongly decided by the court below. I understand very well the advantages possessed by that court over this in the investigation and trial of such questions, and have endeavored to point out some of them in the case of *Snyder v. Wright,* 13 Wis., 689. But this is a cause in equity and not at law, and consequently one in which the appellate court always has reviewed and still must review and decide the questions of fact for itself.

On the part of the plaintiff were three witnesses, the plaintiff herself, Patsey Grier and Patrick Fitzgerald, testifying, and by whom it was claimed to have been shown, that the deed in question was delivered absolutely and not in escrow. Of those witnesses the plaintiff at least, besides her interest, was quite

illiterate and unacquainted with the forms and modes of transacting business. It appears that she was unable to write her own name. She was a person quite likely to have forgotten or fallen into a mistake respecting the true nature of the transaction, and, thus misapprehending, to have testified very innocently that the delivery of the deed was absolute, when in truth it was not so, nor so understood at the time. Of the other two witnesses, who seem to have been warm friends of the plaintiff, and therefore deeply, and I cannot say but very commendably, interested in her success, their want of intelligence and accuracy cannot be said to be quite so apparent. They are evidently men of not very much education, and whose testimony is not to be implicitly relied upon when giving evidence of facts of the kind here in controversy. They certainly made contradictory statements on the witness stand. The witness Patsey Grier, speaking of the transaction at Hathaway's office, and what was said there about the papers, stated that "they were to be delivered up to *both* parties on the first of November." This implies that the deed, as well as the mortgage, was to be retained until the first of November, when it was confidently expected by both parties that the money would be paid in satisfaction of the mortgage. And the same witness, when recalled for the plaintiff after the defendant had rested his case, in answer to the question, "Was there any agreement either one way or the other about leaving the deed with Hathaway?" replied: "Yes, sir, there was; the papers were to be left there until the first of November." The next question put to him was, "What papers?" To which he answered: "The deed and the mortgage; the mortgage was to be left there to secure her on the $200 that was against the place, and *Mr. McCormick* was to pay the $200 the first of November, and pay her $55 besides; then the papers were to be delivered up to each party." It is true that the witness, when again brought to the stand on the next day, endeavored to correct this statement, and to say that it was only the mortgage that was to be left with Hathaway.

And the witness Fitzgerald was scarcely less contradictory of himself, or corroborative of the facts as claimed on the part of the defense. He testified on his first examination to the agreement as finally concluded between the parties at Hathaway's office, the conversation being between the plaintiff and Patsey Grier on one side and the defendant *Roger McCormick* on the other, that, *McCormick* said "We will leave the papers here until I get the money on that mortgage in November; and they all agreed to that." And when recalled after the defendant had rested, he again testified concerning the same conversation: "I didn't hear anything about a deed at all; the question was, the papers were to be left there until he should get those payments that were coming back on the house and lot; when the question came up about this money that was to be paid, they agreed to leave the papers there until he got the money, but I didn't hear anything about a deed." The papers of which the witness was speaking were the deed and mortgage. There were no other papers.

Instead, therefore, of the testimony of these witnesses establishing the position assumed by the plaintiff, their testimony seems quite as strongly, if indeed not more strongly, to sustain the position assumed by the defendant.

The testimony of the two other witnesses for the plaintiff, Hanley and Daily, has little or no bearing upon the question. The fact that *McCormick* refused to sell the mortgage to Connell is fully as consistent with the supposition that he did not consider himself the absolute owner of it, as that he did; and what he said to the last witness about seeing the plaintiff, and that he thought she would throw off something, rather confirms the supposition that he regarded her as the owner of it.

Neither do the facts that the plaintiff was let into possession of the premises, and the policy of insurance assigned to her, have any very positive or controlling influence upon the question. They only show that the parties were very sanguine, the defendant particularly, that the money would be received

upon the mortgage, and that then the plaintiff would become the owner by final delivery of the deed.

But the evidence upon which I rely most strongly is the clear, positive and intelligent testimony of the witnesses Hathaway and Smith. I do not, of course, reject the testimony of the defendant *McCormick* himself, which I think must be freely admitted at least to counterbalance that of the plaintiff; but, supposing it only does that, then I say the clear, positive and intelligent statements of the witnesses Hathaway and Smith are decisive of the question under consideration. Both appear to have been entirely disinterested witnesses. Both are intelligent and worthy men. The record contains not a word against the good character of either. Hathaway is a lawyer by profession, and the person employed by the parties to draft the deed and the assignment of the mortgage. He is the depositary with whom the deed and mortgage were left, showing that both parties had confidence in him. Smith is a justice of the peace, and the officer before whom the parties appeared to make acknowledgment of the execution of the writings. Both of these witnesses testify positively and without hesitation to the agreement that the deed was to be left with Hathaway until the money was paid upon the mortgage, and that when it was paid the deed was to be delivered to the plaintiff, or recorded for her benefit. They recollect and give particulars of the transaction, such as the memorandum in pencil made by Hathaway on the back of the deed showing the terms of deposit, which seem to make the correctness and truthfulness of their statements unmistakable. Hathaway also states other particulars, such as plaintiff's calling upon him at his office for the deed, and saying that he agreed to put it on record. He says that he refused to deliver the deed, and denied that it was to be put on record. It is impossible for me to believe that either he or Smith is mistaken, or that they testify falsely; and one or the other must be my conclusion in order to affirm this judgment.

There are other circumstances in the case which fortify the same view of the transaction. One very important one is, that the premises covered by the mortgage were subject to five prior mortgages, which it seems were nearly if not fully equal in amount to the entire value of the premises. It turns out that a foreclosure soon after took place, and that the mortgage deposited was cut off. It is very unlikely under such circumstances that the defendant would have accepted the mortgage in absolute payment for the property sold by him to the plaintiff, or that he would have consented to part with his title before the mortgage was paid. This circumstance gives a strong air of truth to the position assumed by the defendant, and to the facts as testified by him and his witnesses.

I think the judgment appealed from should be reversed, and the cause remanded with direction to dismiss the complaint.

*By the Court.* — It is so ordered.